IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Bureau of Consumer Financial Protection, | |
| Plaintiff, | Case No. 1:19-cv-10824 |
| v. | **COMPLAINT** |
| Sterling Infosystems, Inc., | |
| Defendant. | |

The Bureau of Consumer Financial Protection (the "Bureau") brings this action against Sterling Infosystems, Inc. ("Defendant") under §§ 1054 and 1055 of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5564 and 5565, and § 621(b)(1)(H) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s(b)(1)(H), to obtain permanent injunctive relief, civil money penalties, consumer redress, and other relief for violations of §§ 605(a), 607(b), and 613(a) of the FCRA, 15 U.S.C. §§ 1681c(a), 1681e(b) and 1681k(a).

## Jurisdiction and Venue

1.    This Court has subject-matter jurisdiction over this action because it is brought under Federal consumer financial law, 12 U.S.C. § 5565(a)(1); presents a federal question, 28 U.S.C. § 1331; and is brought by an agency of the United States, 28 U.S.C. § 1345.

2.     Venue is proper in this district pursuant to 12 U.S.C. § 5564(f) because
Defendant is located, resides, or does business in this District.

**Parties**

3.     The Bureau is an independent agency of the United States charged with
regulating the offering and provision of consumer financial products or services under
Federal consumer financial laws. 12 U.S.C. § 5491(a). The Bureau has independent
litigating authority to enforce Federal consumer financial laws, including the FCRA. 12
U.S.C. §§ 5481(12)(F) and (14), 5564(a) and (b).

4.     Defendant is a privately held corporation headquartered in New York and
incorporated in Delaware. At all times relevant to this Complaint, Defendant has done
business in this District. Defendant conducts searches of public records in this District
and prepares background reports on consumer applicants living and working in this
District. It also does business throughout the United States.

5.     At all times relevant to this Complaint, Defendant has been a "consumer
reporting agency" under § 603(f) of the FCRA, 15 U.S.C. § 1681a(f). Defendant has been
engaged primarily in the business of generating and providing background-screening
reports to clients throughout the United States with respect to consumers who applied
for an employment opportunity with a client and who were the subject of the
background-screening report generated by Defendant ("Applicant"). At all times
relevant to this Complaint, the background-screening reports that Defendant has
prepared are generally "consumer reports" under § 603(d) of the FCRA, 15 U.S.C. §
1681(d).

**Factual Allegations**

6.     When a client orders a consumer report from Defendant, Defendant obtains from either the client or the Applicant various personal identifiers of the Applicant—which may include name (first and last), date of birth, physical address, social security number, driver's license number, and middle name—and uses such information to search public-record sources, including criminal records, civil court records, and driving records, depending on the information ordered by the client. When Defendant locates a public record on an individual that may relate to the Applicant, Defendant compares the information in the public record with the information it obtained on the Applicant. If Defendant determines that the public record matches the Applicant based on the information available to it, Defendant compiles that record, together with all other public records that are determined to be matches for the Applicant, into a consumer report, which is then provided to the client.

**Failure to Employ Reasonable Procedures to
Assure Maximum Possible Accuracy**

7.     Section 607(b) of the FCRA provides that whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b).

8.     In numerous instances between December 16, 2012 and July 31, 2016, Defendant failed to follow reasonable procedures to assure maximum possible accuracy of the criminal-record information in its consumer reports. Until October 2014, Defendant matched criminal records with Applicants based only on two personal identifiers, which could include first and last name (which together counted as one

3

identifier) and date of birth. This policy and practice created a heightened risk of false positives because many commonly named individuals (e.g., John Smith) share the same first and last name and date of birth.

9.      In October 2014, Defendant adopted its first company-wide record-matching policy specifically for Applicants with common names, which required that a public criminal record match an Applicant on the basis of at least three personal identifiers before that record was attributed to an Applicant. But even after October 2014 and continuing through July 31, 2016, Defendant continued in instances to erroneously match criminal records with common-name Applicants.

10.     These continuing errors resulted, in part, from insufficient training on the implementation of Defendant's new common-name policy. The common-name policy itself underwent several clarification revisions after October 2014.

11.     Other instances of reporting errors involving both common and uncommon names were a result of another policy and practice followed by Defendant. This policy permitted matching criminal records with male Applicants based solely on a matching first and last name and matching address. This policy continued until October 2014 for Applicants with common names (when the third identifier requirement was implemented for common-name Applicants) and until June 2015 for Applicants with uncommon names (when Defendant stopped reporting criminal records based on only a name and address match). This created a heightened risk of false positives because some males with the same first and last name (i.e., a junior and senior) live at the same address.

12.     In other instances, on one of its platforms, Defendant included in the Social Security Trace portion of its reports the notation "*** HIGH RISK INDICATOR"

next to an address, followed by a modifying descriptor placing the address into a particular category. These category descriptors included PSYCHIATRIC HOSPITAL, NURSING AND PERSONAL CARE FACILITY, CORRECTIONAL INSTITUTION, and SOCIAL SERVICES FACILITY, among others. The information was accompanied by a message that read: "END-USER IS NOTIFIED THAT FOR LEGAL AND PRACTICAL REASONS INFORMATION OBTAINED THROUGH A SOCIAL SECURITY NUMBER TRACE SHOULD BE USED ONLY TO VERIFY THE INFORMATION PROVIDED BY THE CONSUMER ON HIS/HER EMPLOYMENT APPLICATION. INFORMATION OBTAINED THROUGH A SOCIAL SECURITY NUMBER TRACE SHOULD NOT BE USED ALONE OR IN CONJUNCTION WITH ANY OTHER INFORMATION TO MAKE AN EMPLOYMENT DECISION." Moreover, in some instances Defendant required clients to certify that they "shall not use Social Security Number trace results in any way, directly or indirectly, for the purpose of making employment decisions" or to "confirm[] that information obtained through a Social Security Number trace will not be used to disqualify applicants from employment or employees from continued employment." The source for this "High Risk Indicator" information was a third party, who compiled it from publicly available sources. But Defendant did not implement or follow any procedures to verify the accuracy of these high-risk designations.

13.    Defendant's procedures, failure to follow its procedures, or lack of procedures, as described above, led Defendant to report erroneous adverse items of information about Applicants in their consumer reports. These errors had the potential to result in the denial of employment, missed economic opportunities, and reputational harm to Applicants.

14.     Defendant maintains a disputes department where Applicants could dispute information on their consumer reports. When, as the result of a dispute, Defendant determined that criminal-record information did not in fact relate to an Applicant, Defendant would issue an amended consumer report without the record at issue. But some of these corrections may have come too late for the Applicant to be considered for the job. Applicants sometimes may have had to take lower-paying jobs as a result. Even when errors were corrected before the hiring process was complete, some Applicants may have lost wages during the time it took to resolve these errors.

### Failure to Maintain Strict Procedures to Ensure That Adverse Public Record Information Contained in its Consumer Reports Was Complete and Up to Date

15.     The FCRA contains special requirements for consumer reporting agencies like Defendant that furnish consumer reports containing public record information for employment purposes if that information is likely to have an adverse effect upon a consumer's ability to obtain employment. Section 613(a) of the FCRA requires that a consumer reporting agency must either (1) notify the consumer, at the time such information is reported, of the fact that public record information is being reported, or (2) maintain "strict procedures" designed to ensure the reported public record information is "complete and up to date." 15 U.S.C. § 1681k(a)(1) and (2).

16.     Defendant has not, in many instances, notified Applicants of the fact that it was reporting public-record information about the Applicant at the time that information was being reported, as required to satisfy § 613(a)(1).

17.     From December 2012 through July 31, 2016, for the same reasons that Defendant's procedures were not reasonably designed to assure maximum possible

6

accuracy, they also did not constitute "strict procedures" to ensure that public record information in its Consumer Reports complied with § 613(a)(2).

## Reporting of Outdated Adverse Information

18.     Unless an exemption in § 605(b) of FCRA applies, § 605(a) of the FCRA precludes a consumer reporting agency from including in a consumer report (1) records of arrest that from the date of entry antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is longer, and (2) any other adverse item of information (other than records of convictions of crimes) that antedates the report by more than seven years. 15 U.S.C. § 1681c(a)(2), (5).

19.     In numerous instances as described below, Defendant produced consumer reports containing adverse information that was more than seven years older than the report. In some instances, on one of its platforms, Defendant included in the Social Security Trace portion of its reports the notation "*** HIGH RISK INDICATOR" next to an address at which the Applicant lived and was "last seen" more than seven years before the report was generated. In some cases, such a designation may be an adverse item of information because it could cast the consumer in a negative or unfavorable light. Beginning in May 2012 and continuing through February 2013, Defendant's policies required use of the "disposition" date as the start date for the seven-year reporting period for records of arrest and other non-conviction criminal-record information, rather than the "date of entry" for records of arrest or the date of the criminal charge for other non-conviction criminal-record information, as required under § 605(a) of the FCRA.

20.     The disposition date of a record of arrest or other non-conviction criminal-record information is typically the date the final order of the court is entered with

respect to that arrest or the associated criminal charge. The disposition date will almost always be later than the date of entry of the arrest or the date of the charge, sometimes many years later.

## Violations of the Fair Credit Reporting Act

### Count I

21.     The FCRA requires consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy of the information contained in consumer reports. 15 U.S.C. § 1681e(b).

22.     By and through the acts and practices described in Paragraphs 6 through 14, Defendant violated § 607(b) of the FCRA, 15 U.S.C. § 1681e(b).

### Count II

23.     The FCRA provides that consumer reporting agencies that furnish a consumer report for employment purposes which includes items of information on consumers that are matters of public record and which are likely to have an adverse effect upon a consumer's ability to obtain employment shall either: (1) notify the consumer, at the time that such information is reported, of the fact that public-record information is being reported, or (2) maintain "strict procedures designed to insure" that such information is "complete and up to date." 15 U.S.C. § 1681k(a).

24.     By and through the acts and practices described in Paragraphs 6 through 17, Defendant violated § 613(a) of the FCRA, 15 U.S.C. § 1681k(a).

### Count III

25.     The FCRA prohibits consumer reporting agencies from including the following information in consumer reports: (a) records of arrest that from the date of entry antedate the report by more than seven years or until the governing statute of

limitations has expired, whichever is longer; and (b) any other adverse item of information (other than records of conviction of crimes) which antedates the report by more than seven years. 15 U.S.C. § 1681c(a)(2) and (5).

26.     By and through the acts and practices described in Paragraphs 18 through 20, Defendant violated § 605(a)(2) and (5) of the FCRA, 15 U.S.C. § 1681c(a)(2) & (5).

## Demand for Relief

The Bureau requests that the Court:

a.     permanently enjoin Defendant from committing future violations of the FCRA and enter such other injunctive relief as appropriate;

b.     impose civil money penalties against Defendant;

c.     award such relief as the Court finds necessary to redress injury to consumers resulting from Defendant's violations of the FCRA, including but not limited to refund of moneys paid, restitution, disgorgement or compensation for unjust enrichment, and payment of damages;

d.     order Defendant to pay the Bureau's costs incurred in connection with proceeding with this action; and

e.     award additional relief as the Court may determine to be just and proper.

Dated: November 22, 2019

Respectfully submitted,

Cara Petersen
*Acting Enforcement Director*

David Rubenstein
*Deputy Enforcement Director*

Thomas Kim
*Assistant Deputy Enforcement Director*

_____ S/ _____

Ebony Sunala Johnson (VA 76890)
Reid B. Horwitz (DC 440612)
*Enforcement Attorneys*
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552
Telephone (Johnson): 202-435-7245
Telephone (Horwitz): 202-435-7752
Email: ebony.johnson@cfpb.gov
Email: reid.horwitz@cfpb.gov

*Attorneys for Bureau of Consumer
Financial Protection*