IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

NOV 26 2019

Bureau of Consumer Financial Protection,

    Plaintiff,

Case No. 1:19-cv-10824

v.

**[PROPOSED] STIPULATED FINAL JUDGMENT AND ORDER**

Sterling Infosystems, Inc.,

    Defendant.

The Bureau of Consumer Financial Protection (the "Bureau") commenced this civil action on November 22, 2019, to obtain injunctive and monetary relief and civil penalties from Defendant Sterling Infosystems, Inc. The Complaint alleges violations of §§ 605(a), 607(b), and 613(a) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681c(a), 1681e(b) and 1681k(a), in connection with Defendant's preparation and sale of background-screening reports.

The Bureau and Defendant agree to entry of this Stipulated Final Judgment and Order ("Order"), without adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint.

**THEREFORE, it is ORDERED:**

**FINDINGS**

1. This Court has jurisdiction over the parties and the subject matter of this action.

2. Defendant neither admits nor denies any allegations in the Complaint, except as specified in this Order. For purposes of this Order, Defendant admits the facts necessary to establish the Court's jurisdiction over it and the subject matter of this action.

3. Defendant waives all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claim it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each Party agrees to bear its own costs and expenses, including, without limitation, attorneys' fees.

4. Entry of this Order is in the public interest.

**DEFINITIONS**

5. The following definitions apply to this Order:

    a. **"Affected Consumers"** means the approximately 7,100 Applicants:

        i. Who, based on Defendant's Salesforce disputes data, between December 16, 2012 and July 31, 2016, disputed a criminal record on their Consumer Report prepared by Defendant resulting in a Qualifying Dispute; and

        ii. Whose amended Consumer Report did not contain any criminal records.

b. **"Applicant"** means a consumer who applied for an Employment Opportunity with a Client and who was the subject of a Consumer Report generated by Defendant between December 16, 2012 and July 31, 2016.

c. **"Board"** means Defendant's duly-elected and acting Board of Directors.

d. **"Consumer Report"** has the meaning provided in the FCRA, 15 U.S.C. § 1681 *et seq.*, and any amendments thereto. As of the date of entry of this Order, "Consumer Report" is defined under the FCRA as any written, oral, or other communication of any information by a Consumer Reporting Agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under § 604, 15 U.S.C. § 1681b.

e. **"Consumer Reporting Agency"** or **"CRA"** has the meaning provided in the FCRA, 15 U.S.C. § 1681 *et seq.*, and any amendments thereto. As of the date of entry of this Order, "Consumer Reporting Agency" is defined under the FCRA as any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in

whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing Consumer Reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing Consumer Reports.

f. **"Defendant"** means Sterling Infosystems, Inc., doing business as Sterling, and its successors and assigns.

g. **"Effective Date"** means the date on which this Order is issued.

h. **"Client"** means a client of Defendant that obtains a Consumer Report on an Applicant from Defendant.

i. **"Employment Opportunity"** means an employment opportunity that resulted in a Client ordering one or more Consumer Reports from Defendant for the Client's use in considering Applicant(s) for the employment opportunity. The employment opportunity could represent, among other things, a different position or promotion for an Applicant.

j. **"Enforcement Director"** means the Assistant Director of the Office of Enforcement for the Bureau of Consumer Financial Protection, or his or her delegate.

k. **"HRI Designations"** means High Risk Indicator Designations or other similar characterization of an address that an Applicant may have lived at as high risk as applied by an independent third party to certain consumer address information.

l. **"Qualifying Dispute"** means a dispute submitted between December 16, 2012 and July 31, 2016 that was resolved with the determination that a criminal record on the Consumer Report did not belong to the Applicant.

m. **"Related Consumer Action"** means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Defendant based on substantially the same facts as described in the Complaint.

## CONDUCT RELIEF

### I

### Conduct Requirements

**IT IS FURTHER ORDERED** that:

6. Defendant and its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who have actual notice of this Order, whether acting directly or indirectly, may not violate §§ 605(a)(2) and (5), 607(b), and 613(a) of the FCRA, 15 U.S.C. §§ 1681c(a)(2) and (5), 1681e(b), 1681k(a), and must take the following affirmative actions:

   a. Whenever Defendant prepares a Consumer Report, follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the Consumer Report relates as required by § 607(b) of the FCRA, 15 U.S.C. § 1681e(b);

   b. Whenever Defendant furnishes a Consumer Report for employment purposes for which it compiles and reports items of information on

consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment, either (1) notify consumers in accordance with § 613(a)(1) of the FCRA, 15 U.S.C. § 1681k(a)(1); or (2) maintain strict procedures designed to ensure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up-to-date as required by § 613(a)(2) of the FCRA, 15 U.S.C. § 1681k(a)(2);

c. Follow procedures to prevent the reporting of outdated non-conviction adverse items of information, as proscribed by § 605(a)(2) and (5) of the FCRA, 15 U.S.C. § 1681c;

d. For five (5) years from the Effective Date, remain registered on the Bureau's Company Portal to the extent that such registration does not entail material changes to a registrant's obligations from those currently in place. Defendant, in connection with responding to consumer complaints and inquiries submitted through the Portal, whether acting directly or indirectly, shall comply with the substantive requirements of § 1034(b) and (c) of the CFPA, 12 U.S.C. §§ 5534(b) and (c); and

e. For five (5) years from the Effective Date, not provide HRI Designations to its clients.

# II

## Compliance Committee

**IT IS FURTHER ORDERED** that:

7. Defendant must establish a Compliance Committee. Within fourteen (14) days of the Effective Date, Defendant must provide in writing to the Enforcement Director the name of each member of the Compliance Committee. If there is a change of membership to the Compliance Committee in the five (5) years following the Effective Date, Defendant must submit the name of any new member in writing to the Enforcement Director.

8. For five (5) years, the Compliance Committee will be responsible for monitoring and coordinating Defendant's adherence to the provisions of this Order. During that time, the Compliance Committee must meet at least once every two months and must maintain minutes of its meetings. Defendant must include a summary of the Compliance Committee's work in the annual Compliance Reports submitted by Defendant, as discussed in Section VII. The Board must oversee the Compliance Committee.

# III

# Role of the Board

**IT IS FURTHER ORDERED** that:

9. The Board, or a committee thereof, must review all submissions (including plans, reports, programs, policies, and procedures) required by this Order prior to submission to the Bureau.

10. Although this Order requires Defendant to submit certain documents for the review or non-objection by the Enforcement Director, the Board will have the ultimate responsibility for proper and sound management of Defendant and for ensuring that Defendant complies with Federal consumer financial law and this Order.

11. In each instance that this Order requires the Board to ensure adherence to, or perform certain obligations of Defendant, the Board must:

   a. Authorize whatever actions are necessary for Defendant to fully comply with the Order;

   b. Require timely reporting by management to the Board on the status of compliance obligations; and

   c. Require timely and appropriate corrective action to remedy any material non-compliance with any failures to comply with Board directives related to this Section.

## MONETARY PROVISIONS

## IV

### Order to Pay Redress

**IT IS FURTHER ORDERED** that:

12. Within ten (10) days of the Effective Date, Defendant must reserve or deposit into a segregated deposit account $6 million for the purpose of providing redress to Affected Consumers as required by this Section ("Redress Fund").

13. Within forty-five (45) days of the Effective Date, Defendant must submit to the Enforcement Director for review and non-objection a comprehensive written plan for providing redress to Affected Consumers consistent with this Order ("Redress Plan"). The Enforcement Director will have the discretion to make a determination of non-objection to the Redress Plan or direct Defendant to revise it. If the Enforcement Director directs Defendant to revise the Redress Plan, Defendant must make the revisions and resubmit the Redress Plan to the Enforcement Director within thirty (30) days. After receiving notification that the Enforcement Director has made a determination of non-objection to the Redress Plan, Defendant must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Redress Plan.

14. The Redress Plan must:
    a. Specify the methodology for identifying the Affected Consumers, including through Defendant's Salesforce dispute database and any other records that identify Applicants who disputed the accuracy of

Defendant's Consumer Reports based on the inclusion of criminal records that did not belong to them;

b. Describe the notification Defendant will mail to all Affected Consumers with each redress payment ("Redress Notice");

c. Require Defendant to compensate by check each Affected Consumer on a pro rata basis, with each Affected Consumer receiving a share of the Redress Fund that is proportionate to the number of Qualifying Disputes involving each Affected Consumer;

d. Describe how Defendant will contact Affected Consumers for the purpose of providing redress, and the steps Defendant will take with respect to Affected Consumers whose mailed Redress Notice may be returned to Defendant as undeliverable for any reason, including, at a minimum, using the National Change of Address System to attempt to obtain a current physical address for any Affected Consumer and to promptly re-mail all returned letters to current physical addresses;

e. Require that if a redress check for any Affected Consumer is returned to Defendant, or if a current mailing address cannot be identified using the National Change of Address System, Defendant must retain the redress amount of such consumer for a period of one hundred eighty (180) days from the date the check was originally mailed, during which period such amount may be claimed by such consumer upon appropriate proof of identity;

    f. Provide that Defendant shall pay all costs of administering the Redress Plan as required by this Section; and

    g. Consistent with the terms of this Order, set forth all procedures, deadlines, and timeframes for completing each step of the plan.

15. The redress payments described herein constitute compensation for damage or harm that was or may have been caused by a violation or potential violation of law.

16. After completing the Redress Plan, if the amount of redress provided to Affected Consumers is less than the Redress Fund, within thirty (30) days of the completion of the Redress Plan, Defendant must pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions, the difference between the amount of redress provided to Affected Consumers and the Redress Fund.

17. The Bureau may use these remaining funds to pay additional redress to Affected Consumers. If the Bureau determines, in its sole discretion, that additional redress to Affected Consumers is wholly or partially impracticable or otherwise inappropriate, or if funds remain after the additional redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury as disgorgement. Defendant will have no right to challenge any actions that the Bureau or its representatives may take under this paragraph.

18. Defendant may not condition the payment of any redress to any Affected Consumer under this Order on that Affected Consumer waiving any right.

# V

## Order to Pay Civil Money Penalty

**IT IS FURTHER ORDERED** that:

19. Under § 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint, and taking into account the factors in 12 U.S.C. § 5565(c)(3), Defendant must pay a civil money penalty of $2.5 million to the Bureau.

20. Within ten (10) days of the Effective Date, Defendant must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

21. The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by § 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

22. Defendant must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendant may not:

    a. Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

    b. Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

23. To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendant may not argue that Defendant is entitled to, nor may

Defendant benefit by, any offset or reduction of any compensatory monetary remedies imposed in a Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund. If the court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory monetary remedies imposed against Defendant based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil Penalty Fund, Defendant must, within thirty (30) days after entry of a final order granting such offset or reduction, notify the Bureau, and pay the amount of the offset or reduction to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

## VI

### Additional Monetary Provisions

**IT IS FURTHER ORDERED** that:

24. In the event of any default on Defendant's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

25. Defendant relinquishes all dominion, control, and title to the funds paid under this Order to the fullest extent permitted by law and no part of the funds may be returned to Defendant.

26. The facts alleged in the Complaint will be taken as true and be given collateral estoppel effect, without further proof, in any subsequent civil litigation by or

on behalf of the Bureau, including in a proceeding to enforce its rights to any payment or monetary judgment under this Order, such as a nondischargeability complaint in any bankruptcy case.

27. The facts alleged in the Complaint establish all elements necessary to sustain an action by the Bureau under § 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and for such purposes this Order will have collateral estoppel effect against Defendant, even in Defendant's capacity as debtor-in-possession.

28. Under 31 U.S.C. § 7701, Defendant, unless it already has done so, must furnish to the Bureau its taxpayer identifying numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

29. For ten (10) years from the Effective Date, within thirty (30) days of the entry of a final judgment, order, or settlement in a Related Consumer Action, Defendant must notify the Enforcement Director of the final judgment, order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendant paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid.

## COMPLIANCE PROVISIONS

## VII

### Reporting Requirements

**IT IS FURTHER ORDERED** that:

30. For ten (10) years from the Effective Date, Defendant must notify the Bureau of any development that may affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Defendant; or a change in Defendant's name or address. Defendant must provide this notice, if practicable, at least thirty (30) days before the development, but in any case no later than fourteen (14) days after the development.

31. Within 7 days of the Effective Date, Defendant must designate at least one telephone number and email, physical, and postal address as points of contact, which the Bureau may use to communicate with Defendant.

32. For ten (10) years from the Effective Date, Defendant must report any change in the information required to be submitted under Paragraph 31 at least thirty (30) days before the change or as soon as practicable after learning about the change, whichever is sooner.

33. Within one hundred twenty (120) days of the Effective Date, and again on each of the first through fifth anniversaries of the Effective Date, Defendant must submit to the Enforcement Director an accurate written compliance progress report

("Compliance Report") that has been approved by the Board, or a committee thereof, which, at a minimum:

    a. Lists each applicable paragraph and subparagraph of the Order and describes in detail the manner and form in which Defendant has complied with each such paragraph and subparagraph of this Order;

    b. Describes in detail the manner and form in which Defendant has complied with the Redress Plan; and

    c. Attaches a copy of each Order Acknowledgment obtained under Section VIII, unless previously submitted to the Bureau.

## VIII

## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED** that:

34. Within seven (7) days of the Effective Date, Defendant must submit to the Enforcement Director an acknowledgment of receipt of this Order, sworn under penalty of perjury.

35. Within thirty (30) days of the Effective Date, Defendant must deliver a copy of this Order to each of its board members and executive officers, as well as to any managers, employees, or other agents and representatives who have responsibilities related to the subject matter of the Order.

36. For five (5) years from the Effective Date, Defendant must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section VII, any future board members and executive officers, as well as to any

16

managers, employees, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

37. Defendant must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. § 7001 *et seq.*, within thirty (30) days of delivery, from all persons receiving a copy of this Order under this Section.

## IX

## Recordkeeping

**IT IS FURTHER ORDERED** that:

38. Defendant must create, or if already created, retain, for at least five (5) years from the Effective Date, the following business records:

    a. All documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau.

    b. All documents and records pertaining to the Redress Plan, described in Section IV above.

39. Defendant must retain the documents identified in Paragraph 38 for at least five (5) years from the Effective Date.

40. Defendant must make the documents identified in Paragraph 38 available to the Bureau upon the Bureau's request.

# X

## Notices

**IT IS FURTHER ORDERED** that:

41. Unless otherwise directed in writing by the Bureau, Defendant must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "*CFPB v. Sterling Infosystems, Inc.*, Case No. 1:19-cv-10824," and send them by overnight courier or first-class mail to the below address and contemporaneously by email to Enforcement_Compliance@cfpb.gov:

Assistant Director for Enforcement

Bureau of Consumer Financial Protection

Attention: Office of Enforcement

1700 G Street NW

Washington DC 20552

# XI

## Cooperation with the Bureau

**IT IS FURTHER ORDERED** that:

42. Defendant must cooperate fully to help the Bureau determine the identity and address of, and the amount of injury sustained by, each Affected Consumer based on information in Sterling's or its agents' possession or control. Defendant must provide such information within thirty (30) days of receiving a written request from the Bureau.

# XII

## Compliance Monitoring

**IT IS FURTHER ORDERED** that, to monitor Defendant's compliance with this Order:

43. Within fourteen (14) days of receipt of a written request from the Bureau, Defendant must submit additional compliance reports or other requested non-privileged information, related to requirements of this Order, which must be sworn under penalty of perjury; provide sworn testimony related to requirements of this Order and Defendant's compliance with those requirements; or produce non-privileged documents related to requirements of this Order and Defendant's compliance with those requirements.

44. Defendant must permit Bureau representatives to interview about the requirements of this Order and Defendant's compliance with those requirements any employee or other person affiliated with Defendant who has agreed to such an interview. The person interviewed may have counsel present.

45. Nothing in this Order will limit the Bureau's lawful use of compulsory process, under 12 C.F.R. § 1080.6.

# XIII

## Retention of Jurisdiction

**IT IS FURTHER ORDERED** that:

46. The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

**IT IS SO ORDERED.**

DATED this 26th day of Nov, 2019.

_____
United States District Court Judge